```
                    UNITED STATES BANKRUPTCY COURT
                  FOR THE NORTHERN DISTRICT OF IOWA


IN RE:                          )
                                )    Chapter 7
WAYNE ENGINEERING               )    Bankruptcy No. 05-3394
CORPORATION,                    )
                                )
        Debtor.                 )
------------------------------- )
WAYNE INDUSTRIAL HOLDINGS,      )    Adversary No. 06-09177
                                )
        Plaintiff,              )
                                )
    vs.                         )
                                )
CYNTHIA GORO,                   )
JOHN WORTHINGTON,               )
STAN WORTHINGTON,               )
WAYNE WORTHINGTON,              )
WAYNE, LLC, REPUBLIC            )
FINANCIAL CORPORATION AND       )
E-Z PACK HOLDINGS, LLC,         )
                                )
        Defendants.             )
```

### ORDER RE: DEFENDANTS' MOTION TO DISMISS FOR
### LACK OF SUBJECT MATTER JURISDICTION

This matter came before the undersigned on March 14, 2008 on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.  Plaintiff Wayne Industrial Holdings, LLC was represented by attorney Paula L. Roby.  Defendants Cynthia Goro, John Worthington, Stan Worthington, Wayne Worthington ("Worthington Family"), and Wayne LLC, Republic Financial Corporation, and E-Z Pack Holdings, LLC ("Corporate Defendants") were represented by attorneys Matthew J. Nagle, Michael J. Hofmann, and Dawn M. Gibson.  After hearing arguments of counsel, the Court took the matter under advisement.

### STATEMENT OF THE CASE

Plaintiff Wayne Industrial Holdings, LLC filed a complaint against Defendants requesting temporary and permanent injunctive relief, costs, expenses, attorneys' fees, the turnover of property and "backup" computer data from erased hard drives, and any relief that the Court deems proper.  The complaint concerns the disposition of "Purchased Assets" after the assets left the

bankruptcy estate.  It asserts conversion and intentional interference claims against the Defendants.

The Corporate Defendants filed a Motion to Dismiss, in which the Worthington Family joined.  They assert the Court does not have "core" or "related to" jurisdiction.  Plaintiff asserts the Court has jurisdiction to interpret its Sale Order, and that Defendants omitted important facts supporting jurisdiction in their Motion.  The Sale Order includes jurisdiction-retention provisions.

**STATEMENT OF FACTS**

Plaintiff asserts the following facts which the Court accepts as true for purposes of the Motion to Dismiss.  On July 18, 2005, Debtor Wayne Engineering Corporation filed for Chapter 11 relief.  The case was converted to Chapter 7 on February 27, 2006.  On December 6, 2006, this Court authorized the sale of substantially all of Debtor's assets to Plaintiff in a court order (the "Sales Order").

Wayne, LLC is an entity that was created for the primary purpose of bidding to acquire Debtor's assets.  It was, however, not successful.  Wayne, LLC is, or was at the time of the auction, owned jointly by Defendants Republic Financial Corporation ("RFC") and the Worthington Family.  The Worthington Family Defendants are the majority stockholders of Debtor and were, until the sale, the operating officers of Debtor.

RFC was originally an interested party in the bidding for Debtor's assets.  It submitted a letter of intent to Chapter 7 Trustee Wesley B. Huisinga ("Trustee") stating an intent to submit a purchase offer.  That letter indicated that RFC expected to submit an initial bid of $6 million for the assets.  After submitting its initial letter of intent, RFC negotiated an agreement with the Worthington Family, who also sought to bid for the assets.  They decided to cooperate with RFC so that there was only one active bidder for the company.  They formed Wayne, LLC.  The Worthington Family then withdrew from any independent bidding for the assets.  Wayne, LLC submitted a new letter of intent to purchase Debtor's assets for $5,750,000.

By combining with the Worthington Family, RFC could have expected to gain at least $500,000 in value, as the Worthington Family was prepared to bid as much as $6.2 million or more.  This agreement between RFC and the Worthington Family also resulted in the Trustee agreeing that the Wayne, LLC Asset Purchase Agreement, if submitted by a certain deadline, would be the

initial "Stalking Horse" bid for Debtor's assets. That agreement also contained a provision for a $200,000 "break-up fee," subject to Court approval.

    In forming Wayne, LLC, RFC negotiated an agreement with the Worthington Family for three of the individual family members to become employees of Wayne, LLC if it became the successful bidder for Debtor's assets. This agreement also "locked-up" the Worthington Family members, and prevented them from cooperating with any other potential bidders. It required them to report to RFC any contact with bidders making due diligence inquiries. This "lock-up" occurred at a time when the Worthington Family members were all employed by the Trustee and were acting as fiduciaries for the bankruptcy estate.

    During the time that the agreements between RFC and the Worthington Family were being made, and unbeknownst to the Trustee or any other potential bidders, Debtor received an order to sell sixty garbage trucks to the government of Jamaica (the "Jamaica Order"). Debtor worked hard to satisfy the financing and logistics needed to fulfil the order. The Jamaica Order was valued at nearly $11 million, and would have almost equaled the entire gross revenue of Debtor from the prior year.

    During this time, Trustee attempted to obtain complete order, backlog and pipeline information concerning all of Debtor's order activity. Neither the Worthington Family nor RFC, however, revealed the existence of the Jamaica Order prior to the sale of Debtor's assets. It was not until Plaintiff filed this adversary proceeding and commenced its discovery efforts that the Jamaica Order was discovered.

    All defendants have at one time or another denied that the Jamaica Order was an asset of Debtor purchased by Plaintiff at the sale. Plaintiff's Asset Purchase Agreement, however, defines "Purchased Assets." Paragraph 2.1(j) states that Purchased Assets include: "all orders, open orders (booked or not yet booked), sales in 'pipeline' and all backlog or back orders."

    The Sale Order also contains jurisdiction-retention provisions. Debtor had considerable input in drafting the Sales Order and presenting it to this Court, and the Worthington Family defendants were principles of Debtor at the time. The Sales Order states in paragraph 18 that,

> This Court retains exclusive jurisdiction to (i)approve or reject material modifications to the Final Purchase Agreement, (ii) enforce and implement the terms and

provisions of the Final Purchase Agreement, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith, (iii) compel delivery of the Purchased Assets to the Successful Bidder, (iv) resolve any disputes arising under or related to the Final Purchase Agreement and related agreements, except as otherwise provided therein, (v) enjoin the assertion of any Claims against the Successful Bidder or the Purchased Assets, and (vi) interpret, implement and enforce the provisions of this Final Sale Order.

Plaintiff's complaint concerns assets of Debtor that it believes should have come to Plaintiff as a result of the sale. Plaintiff asserts that assets were concealed, converted or diverted by the Defendants in contravention of the Sale Order. Defendants claim that this Court lacks subject matter jurisdiction because this proceeding against them concerns the fate of "Purchased Assets" after they left the bankruptcy estate. They claim that the matter is neither "core" nor within the "related to" jurisdiction of this Court.

Plaintiff claims that the retention of jurisdiction set out in the Sale Order is completely dispositive of the motion to dismiss, and that no basis exists for the claim that this Court lacks subject matter jurisdiction. It asserts that this Court has either "core" or "related to" jurisdiction to hear this case.

**MOTION TO DISMISS**

For the court to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993). If the complaint is challenged on its face, the factual claims concerning jurisdiction are presumed to be true. Id. The motion will be successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction. Id. Courts have the authority to consider matters outside the pleadings on a motion challenging subject matter jurisdiction under Rule 12(b)(1). Deuser v. Vecera, 139 F.3d 1190, 1192 (8th Cir. 1998). The plaintiff has the burden of proof that jurisdiction exists. Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990).

**CORE AND "RELATED TO" JURISDICTION**

The jurisdiction of a Bankruptcy Court is defined by statute

4

and limited in scope.  Celotex Corp. v Edwards, 514 U.S. 300, 307 (1995).  Bankruptcy judges may decide all bankruptcy cases and all core proceedings arising under the Bankruptcy Code or arising in a bankruptcy case.  28 U.S.C. § 157(b)(1).  The bankruptcy judge shall determine whether a proceeding is a "core" proceeding under § 157(b), or whether a proceeding is "related to" a case under Title 11.  28 U.S.C. § 157(b)(3).

"Core proceedings are actions which arise only in bankruptcy or involve a right created by federal bankruptcy law."  In re Farmland Industries, Inc., 378 B.R. 829, 833 (B.A.P. 8th Cir. 2007) (citing Specialty Mills, Inc. v. Citizens State Bank, 51 F.3d 770, 773 (8th Cir. 1995).  Core proceedings include, but are not restricted to "(A) matters concerning the administration of the estate; ... (M) orders approving the use ... of property; ... [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims."  28 U.S.C. § 157(b)(2)(A), (M) and (O); In re Farmland Industries, Inc., 296 B.R. 793, 802 (B.A.P. 8th Cir. 2003).

Bankruptcy judges may also hear non-core proceedings that are otherwise related to a bankruptcy case.  28 U.S.C. § 157(c); Farmland, 378 B.R. at 834.  For courts to assert jurisdiction over a proceeding "related to" a bankruptcy case, the proceeding must have some conceivable effect on the administration of the debtor's estate.  Specialty Mills, Inc., 51 F.3d at 774. Possible effects include any matter that could alter the debtor's rights or liabilities and which in any way impacts upon the handling and administration of the bankruptcy estate.  Integrated Health Servs. v. THCI Co., 417 F.3d 953, 958 (8th Cir. 2005).  Although the scope of "related to" jurisdiction is very broad, it is not without limits.  Farmland, 378 B.R. at 834.  "[T]here is a statutory, and eventually constitutional limitation to the power of a bankruptcy court.  For subject matter jurisdiction to exist . . . there must be some nexus between the 'related' civil proceeding and the [bankruptcy] case."  Id. (quoting Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir. 1984)).

**ANALYSIS**

Applying the law to the above facts, the Court concludes that this is a core proceeding under 28 U.S.C. § 157(b)(2)(M) and (O).  The Court may consider matters outside the pleadings in order to sustain its jurisdiction.  The Asset Purchase Agreement specified which assets would be acquired in the auction pursuant to the Court approved Sales Order.  It stated that "all orders,

5

open orders (booked or not yet booked), sales in 'pipeline' and all backlog or back orders" were to be included in the Purchased Assets. Also, the Court-approved Sales Order laid out the procedures to be followed at auction, while retaining jurisdiction to make sure the procedures were followed equitably to all parties.

Although Defendants deny that the Jamaica Order was part of the Purchased Assets, Plaintiff's allegations are accepted as a verity for purposes of this Motion. Sections 157(b)(2)(M) and (O) provide that core proceedings include orders approving the use of property, and also other proceedings affecting the liquidation of the assets of the estate. The magnitude of the Jamaica Order could have greatly affected the sale price of Debtor's assets at auction, and therefore would have affected the size of the bankruptcy estate when Debtor's assets were liquidated. The Sales Order was approved under the assumption that Debtor was forthright in disclosing all assets to the Trustee. This Court has core jurisdiction to ensure that it was.

Alternatively, this Court also concludes that it has "related to" jurisdiction to hear this case under § 157(b)(3). The complaint alleges that "Purchased Assets" were not turned over to Plaintiff, the purchaser of Debtor's assets. This sale was contemplated pursuant to a Sales Order approved by this Court. The outcome of the proceeding may affect the administration of Debtor's estate if the Court ultimately concludes that estate assets must be turned over to Plaintiff.

The nexus between the "related" proceeding and the bankruptcy case lies within the definition of "Purchased Assets" in the Asset Purchase Agreement and the jurisdiction-retention provisions in the Sales Order. Together, these documents specify how Debtor's bankruptcy estate was to be liquidated and the mechanisms available to enforce its disposition. An allegation that the Order was not properly enforced comes within the umbrella of this Court's "related to" jurisdiction.

Defendants rely heavily on their comparison between this case and <u>Farmland Industries</u> in trying to persuade the Court that it lacks "core" or "related to" jurisdiction. 378 B.R. 829. Although both cases involved property sold pursuant to a bankruptcy court order, <u>Farmland</u> involved property in dispute that had been transferred to the buyer, where the bankruptcy court had already ruled on an unsuccessful bidder's challenge to the sale order. <u>Id.</u> The <u>Farmland</u> court refused to hear that same unsuccessful bidder when he returned seeking damages against third parties, three years later. <u>Id.</u> The Sales Order herein

was approved on December 7, 2006, less than a year and a half ago.  Plaintiffs filed its complaint on December 20, 2006.  This Court sits in the most favorable position to enforce and interpret its own Order.

## CONCLUSION

Plaintiff has met its burden to establish subject matter jurisdiction.  Accepting the Complaint's factual averments as true, and considering the Sales Order and Asset Purchase Agreement, this Court finds that it has "core" jurisdiction under § 157(b)(2)(M) and (O), and "related to" jurisdiction under § 157(b)(3) over Counts I, II, III, and IV.

**WHEREFORE,** Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED.

DATED AND ENTERED:

April 17, 2008

38/01                                   PAUL J. KILBURG
                                        U.S. BANKRUPTCY JUDGE